THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of ABRAHAM J. LIFTON, Complainant, *v.* CAPITOL FUELS OF QUEENS, INC., Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, on Complaint of THOMAS J. B. SPENCER, Complainant, *v.* CAPITOL FUELS ·OF QUEENS, INC., Defendant.

City Magistrates' Court of New York, Municipal Term, Borough of Brooklyn, July 26, 1938.

*William C. Chanler, Corporation Counsel* [*Silas Lippman* of counsel], for the People.

*Goldstein & Goldstein* [*Jonah J. Goldstein* of counsel], for the defendant.

BROMBERGER, C. M. The defendant corporation is here charged upon two separate informations, consolidated for the purpose of this opinion and decision into one, with the sale and delivery of anthracite pea coal in units other than a ton, in violation of chapter 36, title B, article 4, section B36–34.0, of the Administrative Code of the City of New York.

The evidence, undisputed by the defendant, clearly established that in both instances " broken loads " of such anthracite coal were delivered as charged in the informations, respectively to 285 Division avenue, Kings county, from the defendant's yard. The defendant, however, urges that as a matter of law it is not guilty of the violation.

The defendant's first contention is that the statute does not apply to anthracite coal. Subdivision a of section B36–34.0 of the Administrative Code is derived from subdivision 7 of section 31 of article 6 of chapter 15 of the Code of Ordinances:

" 7. Compartments, quantities and numerals. All types of solid fuel, other than coke, soft coal, anthracite buckwheat, rice, barley, or dust, or mixtures thereof, whether for sale to a consumer or for resale, must be sold or delivered in quantities of one ton or multiples thereof."

This statutory source clearly encompassed anthracite pea coal, the type of coal here involved. Upon consolidation and re-enactment in the new Administrative Code, a comma was inserted between the words " anthracite " and " buckwheat " erroneously and without any intent to change the meaning of the derivative section. The defendant relies upon this palpable error to avoid its penal responsibility for violation of the regulatory requirement.

The Administrative Code was enacted at a special session of the State Legislature in December, 1937, to supplement the simplified

City Charter theretofore recently adopted by the People. The Code was prepared and enacted merely as a consolidation of the tremendous body of law pertaining to the city of New York, and was not intended by its enactors to have the effect of instituting or establishing new law or of altering the meaning or intent of the old, except to the extent necessary to harmonize it with the provisions of the Charter. This is clearly indicated by section 982–1.0 of the Code which provides:

" Legislative intent. It is the intent of the Legislature by this act to provide an Administrative Code for the City of New York harmonizing with the provisions of the New York City Charter. In so far as this act revises, consolidates, codifies, continues or restates the provisions of any statutes, local laws or ordinances, applicable to the city of New York and in force on December thirty-first, nineteen hundred thirty-seven, such provisions shall be deemed unchanged in substance and effect except as may be necessary to harmonize them with the New York City Charter except as any of such provisions are specifically repealed by this act."

Also, section 1–0.0 of the Code states: " The purpose of this Code is solely to codify and restate present existing statutes and laws, general, special and local, except where changes are necessary to conform such statutes and laws to the New York City Charter."

It is also a matter of wide public knowledge that at the time of the adoption of the Administrative Code, both houses of the Legislature were assured by the representative of the city of New York in whom the legislators publicly expressed complete confidence, that no such change or alteration in existing laws was contemplated or included in the Administrative Code. Resting, and so publicly stating, partially upon this assurance, the Administrative Code was adopted by the legislative branches of the State government and approved by the Governor.

In the light of this historic background and these legislative statements of intent, defendant's position is untenable, and the provision in question must be read in conformity with the originating source and without the comma which had been inadvertently inserted.

The defendant also argues that this statute is unconstitutional as not within the police power of the State, and as an arbitrary, unfair and unreasonable interference with the free enjoyment of property, relying upon the case of *City of Buffalo* v. *Collins Baking Co.* (39 App. Div. 432). However, that case does not hold that a municipality cannot regulate the conduct of a business affected with a public use or interest, but merely that the court did not view the specific statute there under consideration by it as one

for the public good. So, too, the other cases cited by the defendant are not decisive in the instant case.

This court will not set aside or declare unconstitutional a legislative enactment or executive or administrative regulation legally controlling, unless it be so clearly arbitrary or unreasonable or contrary to the public good that such action upon the part of the court is compellingly commanded in the public interest. The judicial function is not to give effect to the will of the judge, nor to determine the wisdom of the legislative branch of our government in its enactments. So long as the statute or other enactment or regulation seems to bear some reasonable relationship to the public health, safety, morals, convenience or comfort, and is not clearly violative of constitutional limitations, it must be sustained and enforced.

In the present instance, the statute is but a single part of a comprehensive plan enacted into law for the essential protection of the community in its dealings with the solid fuel industry. Experience has demonstrated indelibly the necessity for these safeguards. Read in conjunction with those other provisions, the section here under discussion clearly has a distinct relationship to the public good.

The defendant has failed to demonstrate the unconstitutionality of the statute under attack by it.

The motion of the defendant to dismiss the informations is denied. Upon the entire evidence the defendant is found guilty as charged.